**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

KENNY HALFACRE
ADC #84410 PLAINTIFF

V. NO: 5:06CV00197 JLH/HDY

DAVID CRUSETURNER *et al.* DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.
2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the

hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

An evidentiary hearing was held in this case on May 25, 2007. Following the presentation of testimony and exhibits by the parties and witnesses, the undersigned entered findings and recommendations that Plaintiff's complaint be dismissed. That recommendation was rejected by Judge Holmes, who directed that a supplemental hearing be held to receive testimony from Vanita King, and W.H. Ashcraft, and to obtain certain phone records, if possible. On August 17, 2007, a supplemental hearing was held, at which King and Ashcraft testified, but the phone records in question do not exist.

### I. Facts

The events at issue in this case began in September or October of 2004, while Plaintiff was incarcerated at the Arkansas Department of Correction's ("ADC") Grimes Unit. Plaintiff was a

construction clerk under the supervision of W.H. Ahscraft, a construction supervisor. David Cruseturner, an ADC assistant director, was Ashcraft's supervisor. Ashcraft and another construction supervisor, Brandon Wood, allegedly got into a fight, and were terminated. Ashcraft subsequently filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). Although Plaintiff asserted in his complaint, and in his testimony, that he provided a statement to the EEOC in support of Ashcraft's claim, Ashcraft testified at the supplemental hearing that he was unaware of any such statement or support from Plaintiff.

On December 13, 2004, Plaintiff spoke with Ashcraft by phone, and Ashcraft asked Plaintiff to relay a message asking Wood to call Cruseturner regarding his (Ashcraft's) employment status. Cruseturner learned of the telephone contact between Ashcraft (who was no longer an ADC employee) and Plaintiff. Cruseturner had known Plaintiff for several years because of previous construction clerk jobs that Plaintiff had been assigned to at other ADC units. Cruseturner's prior experience with Plaintiff at the construction jobs caused Cruseturner to view with concern Plaintiff's continual assignment to work as a construction clerk with more freedom than most inmate jobs. In April of 2004, Cruseturner went to the Grimes construction site, where he observed that Plaintiff was working as a clerk in a location outside the unit's security fence. Cruseturner testified that he told Plaintiff if he ever got into trouble (i.e. violated the trust given to those such as Plaintiff working outside the security fence), he would go back to the "farm" (Cummins).[1] In December of 2004, when Cruseturner found out about the phone call between Ashcraft and Plaintiff, he directed that Plaintiff be transferred from Grimes to Cummins. According to Crystal Wood, the classification officer at Cummins, Plaintiff was placed into administrative segregation on a temporary basis

[1] It is noteworthy that Cruseturner made that remark well before the incident involving Ashcraft and Wood that led to the EEOC charge.

pending investigation of the reasons for his transfer to Cummins. This was not an unusual temporary assignment for a prisoner being transferred due to some "incident" at another unit. Plaintiff's transfer, and his housing assignment in administrative segregation, led to Plaintiff being classified as IC, rather than IB, which prevented Plaintiff from holding some jobs outside the prison facility.[2]

Plaintiff had two hearings at Cummins regarding his status in administrative segregation. The first, on December 16, 2004, was preliminary in nature. According to Kim Luckett, a deputy warden at the Varner Unit who was at Cummins at the time, Plaintiff indicated at that hearing that he would like to remain in administrative segregation, rather than be placed into general population. Because of that same request at his second hearing, Plaintiff was permanently assigned to administration segregation. Defendants exhibit #6, introduced at the first hearing, is a report documenting the results of the classification committee hearing held on December 22, 2004. Meredith McConnell, a Cummins Unit sergeant, testified that it is her writing on the report indicating that Plaintiff did not want out of administrative segregation, and that she would only write that if Plaintiff himself requested it. There is no evidence that either Defendant had anything to do with Plaintiff's assignment to administrative segregation, or his classification status.

Because of maintenance needs of the ADC, Plaintiff was later transferred to the Tucker Maximum Security Unit, regained his IB status, and was again working in outside maintenance. King, a classification officer at the Tucker Maximum Security Unit, testified that Plaintiff was placed in outside maintenance two months after arriving at the Tucker Maximum Security Unit. In the normal course of overseeing ADC maintenance and construction projects, Cruseturner found out about Plaintiff's work assignment, and, in April of 2005, called assistant director Larry May to relay

[2]Evidence at the first hearing indicated that Plaintiff was placed into administrative segregation upon arrival at Cumins pending investigation into the reasons for the transfer, and that he then requested to remain there, rather than moving into the general population.

his concerns that Plaintiff had access to a phone in his job at the Tucker Maximum Security Unit. (The Tucker Maximum Security Unit is one of the units which May has general oversight for within the ADC system). This prompted May to call warden White and ask him to review Plaintiff's job assignment. White testified that it was not difficult to find Plaintiff another job assignment, so he moved him from the outside maintenance job to address May's security concern about access to the telephone.

According to Plaintiff, the initial transfer from Grimes was in retaliation for his participation in the EEOC investigation, and the subsequent transfer, reduction in class and placement into administrative segregation were in retaliation for the EEOC participation, and for his grievances and for an earlier lawsuit.[3] At the first hearing, both Cruseturner and May testified that they did not even know of Plaintiff's involvement with the EEOC at the time Plaintiff was initially transferred from Grimes. Since Ashcraft, the EEOC claimant himself had no awareness of Plaintiff having any involvement in the EEOC complaint, Cruseturner's and May's testimony that they had no such knowledge seems very reliable on this point. In December of 2004, when Cruseturner found out about the phone incident, he directed that Plaintiff be transferred. According to Cruseturner, Plaintiff's phone usage was unauthorized. Additionally, Cruseturner also testified that this was necessary for him to keep his word to Plaintiff that if he (Plaintiff) ever got into trouble at Grimes, he would be sent back to Cummins. Cruseturner testified that this was particularly important in a prison setting.

At the first hearing, a dispute arose as to whether Plaintiff called Ashcraft, or Ashcraft called Plaintiff to discuss Ashcraft's employment situation. According to Plaintiff, he merely accepted an

---

[3]On April 14, 2005, Plaintiff filed a lawsuit over his transfers, but that action was dismissed due to Plaintiff's failure to exhaust his administrative remedies. *See* ED/AR No. 5:05CV109.

incoming call from Ashcraft, and passed a message along as construction clerks regularly did as a part of their duties. Ashcraft testified at the supplemental hearing that, although he couldn't remember the dates, he called Plaintiff once around that time period, and that Plaintiff called him twice. Ashcraft also testified that Cruseturner asked him whether Plaintiff had called out to Ashcraft, and that Cruseturner was "pretty upset about that phone call." Regardless of whether Ashcraft or the Plaintiff initiated the December 13, 2004, call, Ashcraft's testimony supports Cruseturner's contention that Plaintiff was transferred due to Cruseturner's perception that Plaintiff had engaged in unauthorized phone use, and not due to any support or statement that Plaintiff had provided for Ashcraft's EEOC claim.

Regarding the transfer at the Tucker Maximum Security Unit being from a job "outside the fence" to one inside the unit, King testified that warden David White told her that Plaintiff needed to be inside, and Plaintiff was therefore moved. According to Plaintiff, he was then performing work as a classification clerk in the unit count room, yet was listed as a hall porter, so that Cruseturner would not know what he was doing. However, King testified that all clerks were changed to porters, and Plaintiff was not the only one whose title changed. King also testified that she made the change at the request of White, but never talked to Defendants about the change.

## II. Analysis

As the undersigned has previously noted, Plaintiff has no right to be held in any particular facility, but cannot be transferred in retaliation for exercising his constitutional rights. *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999). Additionally, inmates have no constitutional right to be assigned to a particular job. *Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir.1987). Plaintiff asserts that his transfer, his job assignments, and status changes, were in retaliation for the exercise of constitutional rights. The undersigned has previously found that the evidence indicates that

Defendants had nothing to do with his assignment to administrative segregation, or his classification status, following his initial move from the Grimes unit. Cruseturner did have Plaintiff transferred initially from the Grimes unit over his phone conversations with Ashcraft. Cruseturner may have been in error about whether Ashcraft or Plaintiff initiated the December 13, 2004, call, which precipitated the transfer. Still, the transfer had nothing to do with retaliation for Plaintiff providing a statement or other support for Ashcraft's EEOC complaint.

Likewise, the evidence from the previous hearing indicates that Plaintiff's transfer from a maintenance clerk's position when he was at the Tucker Maximum Security Unit was the result of May calling White with his concerns about Plaintiff working in that position. It appears that May's concern was motivated by a desire to avoid another controversy involving Plaintiff and a telephone. At the supplemental hearing, King testified that she did not know why Plaintiff was transferred from the outside job to the inside classification clerk's position. King's testimony further indicates that Plaintiff's later change in job title from a classification clerk to hall porter was a standard move to change all similar positions to porters, rather than clerks, and not done to hide Plaintiff's actual work from Cruseturner.[4] Thus, King's testimony offered no evidence of any constitutional violation by either Defendant.

In summary, after consideration of the testimony offered at the supplemental hearing, along with the evidence previously received, Plaintiff has not met his burden of proving, by a preponderance of the evidence, that either Defendant had him transferred, reduced in class, or removed from any job, for any constitutionally impermissible reason.

---

[4]Even if this change in job titles represented an effort by White to conceal Plaintiff's actual job assignment from Cruseturner and May, that fact would not support Plaintiff's complaint herein against either Defendant.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Plaintiff's complaint be DISMISSED WITH PREJUDICE.

DATED this ___18___ day of September, 2007.

H Daniel Young

UNITED STATES MAGISTRATE JUDGE